## SMITH V. LAWRENCE *et al.*

1.   When *mandamus* proceedings are instituted to redress a private wrong or enforce a private right, the party beneficially interested should be named as plaintiff.
2.   When a plaintiff in *mandamus* proceedings demands a greater relief than he is entitled to on the facts stated in his affidavit, he will not thereby be precluded from obtaining less relief, to which he is entitled under the facts stated.
3.   Under Section 1, c. 84, Laws 1890, a majority of the county commissioners in a county having five commissioners, duly taken to the assistance of the county auditor, constitutes with such auditor a legal board of canvassers, whether the county auditor is a candidate for office or not; such county auditor, however, acting only as clerk of said board in case he is a candidate for office.   The provisions of Section 18 of said chapter are called into exercise only in case the county auditor is a candidate for office, and he has taken to his assistance a majority of the county commissioners in a county having three commissioners, or only two of the other officers named in Section 1, except so far as it defines his duties as clerk of the board.
4.   When returns are made by the proper officers of a precinct in a county to the county auditor, within the proper time, it is the duty of the county board of canvassers to canvass and abstract the vote of such precinct, and, when such board fails or neglects to count, canvass, and abstract the vote of such precinct, it fails to perform a clear, plain, and specific duty imposed upon it by law, and *mandamus* is the proper proceeding to compel such board to perform its duty.
5.   The fact that a board of canvassers has filed its abstract of the votes cast in a county with the county auditor, and adjourned *sine die*, and that the county auditor has issued a certificate of election to the person appearing by such abstract to have the highest number of votes for the office of sheriff, is no ground for a refusal of the writ, when it is shown that a part only of the returns have been canvassed, and the omitted part would have changed the result.

6. On the trial a document purporting to be signed by the judges of election, and taken with the poll book from the sealed envelope forwarded to the county auditor from precinct No. 26, was offered in evidence by counsel for defendants, objected to, and excluded by the court. The document purported to detail the proceedings of the judges of election in reference to the votes of nine soldiers of the United States who were allowed to vote at said election in said precinct. *Held*, that this document was properly excluded by the court; that judges of election are not required or authorized to make or enclose any such document with their returns; and that it could have no force or effect, and was therefore incompetent, irrelevant, and immaterial. *Held further*, that the certificate of officers not required or authorized by law has no more force or effect than the certificate of private persons. *Held further*, that when votes have been received and deposited by the judges of election in the ballot-box, they have no further control over them except to count them, and include them in the entries they are required to make in their poll books, and that any other statement by such judges in regard to such votes is beyond their powers as judges of the election, and clearly improper, and should have been entirely disregarded by the board of canvassers.

7. The duties of boards of canvassers are purely ministerial. They are vested with no authority to take evidence, or hear or determine any question relative to the validity or regularity of any election, or as to the qualifications of any voter who may have voted, or the eligibility or non-eligibility of any candidate voted for. Their duties are to open the returns, and make abstracts of the votes from all the precincts appearing by said returns, and to sign and certify to such abstracts.

8. Questions of the regularity of the election, qualification of the voters, fraud in the election, etc., are matters exclusively for the court in proper proceedings, and are not matters which boards of canvassers have authority to hear or determine.

9. The fact that, since *mandamus* proceedings have been instituted in this case, Faust, the opposing candidate for sheriff, has entered upon the discharge of the duties of sheriff of said Sully county, is no ground for refusing the writ.

10. The plaintiff is entitled to have the abstract made and filed with the auditor show who received the highest number of votes for the office of sheriff of that county, and, if the returns of Sully county show that plaintiff has the highest number, he is entitled to the benefit of such a corrected abstract, and the certificate to which such abstract shows he is entitled.

11. It not appearing that the county auditor has refused or neglected to perform any duty imposed upon him, he is not an indispensable party to these proceedings. The court will presume that he will perform the duties of clerk of the board of canvassers when convened, and file any amended abstract that may be made by it, as county auditor, and issue the proper certificate thereon.

12. Mateer, a member of the board of canvassers, was a member of the

board of county commissioners of Sully county at the time he was taken as such canvasser. His term of office as county commissioner expired in January, 1891. *Held,* that he still continues a member of the board of canvassers for the performance of such duties as were imposed by law upon the board, and which it neglected to perform as such board of county canvassers, and can be properly required to meet with the other members of the board, and complete the canvass of the vote of Sully county.

13. Where the duty of the board of canvassers is clearly and specifically imposed by law, and it has neglected to perform that duty, no special demand is necessary. "The law itself makes the demand, and the omission to perform is the refusal."

(Syllabus by the Court. Opinion filed June 19, 1891.)

Appeal from the circuit court, Sully county. Hon. H. G. FULLER, Judge.

Application for a *mandamus* to compel the defendants to reconvene as a board of canvassers of Sully county, and to count, canvass and abstract all the votes cast in said county. The defendants first moved to dismiss the application, which motion was denied. They then demurred to the application, and the demurrer was overruled. They then answered and the cause was tried upon the issues thereupon raised. Plaintiff had judgement. From that judgment this appeal is taken. Modified and affirmed.

The facts are stated in the opinion.

*Crawford & De Land* and *D. M. Anderson* for appellants.

*Mandamus* proceedings are governed by one of two rules of procedure; one, where the community in general is beneficially interested and the relator is concerned only in common with the community in general; the other, where the plaintiff seeks to redress his own private wrongs, and the injury is peculiar to himself. In the latter class of cases the aggrieved party himself must be the plaintiff and cannot invoke the name of the state. In the first class of cases the proceedings must be instituted in the name of the state, and, in the absence of a special statute to the contrary, no one but the state's attorney or attorney general has power to use the name of the state. Territory, *ex rel,* v. Cole, 3 Dak. 301; High on Ext. Rem., § 436; Wood v. Bangs, 1 Dak. 186; People v. Pica, 29 Cal. 211; People

v. Andrews, 53 N. Y. 445; Doolittle v. Supervisors, 18 N. Y. 155; Hale v. Cushman, 6 Met. 425; Babbett v. State, 10 Kan. 15; People v. Green, 29 Mich. 121; Linden v. Board, 45 Cal. 6.

The causes of action joined must not affect one party as to a public right only, and the other as to a private right only. The motion to dismiss fairly raised this question of improper joinder of causes of action.    Subd. 5, § 4909, Comp. Laws; Bliss Code Plead. § 117; Ferrin v. Myrick, 41 N. Y. 315; Austin v. Monroe, 47 Id. 360; Grant v. McCarty, 38 Ia. 468.

Three county officers who are not candidates called to the assistance of the county auditor, may organize a valid board of canvassers, the object of the statute being to provide a board where there could be a majority, rule and a quorum.    §§ 1, 2, 18, Chap. 84, Sess. Laws 1890; Chap. 33, Sess. Laws 1883; p. 92, § 31, Code 1877; Chap. 71, Sess. Laws 1881.

The defendants and the auditor met, made abstracts of the votes, ordered certificates of election to be issued and adjourned. This dissolved the board and ended its functions.    Ter. *ex rel.* v. Cole, 3 Dak. 301.    No board or tribunal is made defendant herein.    The fact that these defendants are county commissioners gives the court no power over them in matters not specially enjoined upon them as commissioners.    Thatcher v. Adams, 27 N. W. 729.    The county auditor should have been made a party defendant.

A specific demand should have been made in apt time upon defendants, and diligence shown to have been used in requiring action within the statutory period.    State v. Stewart, 26 O. St. 216; State v. Rodman, 43 Mo. 256; Gray v. Saginaw, 14 N. W. 666; People v. Supervisors, 12 Barb. 217; People v. Romero, 18 Cal. 91; Crandall v. Amador, 20 Id. 72; Price v. R. L. & I. Co., 56 Cal. 431.

The board having acted and the time within which action should have been taken having elapsed, it was too late for plaintiff to ask relief for a private injury.    High Ext. Rem., §§ 450, 451, 57, 49, 50, 51.

Plaintiff had other plain, speedy and adequate remedies at law.    A certificate of election having issued the remedy is by

*quo warranto* or statutory contest. Again, the record shows the plaintiff to be guilty of laches. High Ext. Rem., §§ 14, 15, 57, 62, 450; §§ 1489 to 1499, Comp. Laws; Ingerson v. Berry, 14 O. St. 314; Anderson v. Colson, 1 Neb. 172; St. Louis Co. Court v. Sparks, 10 Mo. 118; Com. v. Perkins, 7 Pa. St. 42; People v. Forquer, Breese, 68; People v. New York, 3 John's Cases 79; Briggs v. McBride, 21 Pac. 882; People v. Common Council, 18 Mich. 338; Oglesby v. Sigman, 58 Mo. 502; People v. Stevens, 5 Hill, 616; Driscoll v. Jones, 1 S. D. 8; Clark v. Board, 126 Mass. 282; Luce v. Board, 26 N. E. 419; State v. Smith, 15 S. W. 614; Bowen v. Hixon, 45 Mo. 340; O'Hara v. Powell, 80 N. C, 103; Myers v. Chalmers, 60 Miss. 772; Mc-Crary on El. §§ 333, 337, 221; Sherbern v. Home, 45 Mich. 160; Briggs v. McBride, 21 Pac. 882; People v. Coven, 50 Ill. 100.

The defendant Mateer is no longer a county commissioner and this action has not been revived against his successor. The court could not give judgment against him after the expiration of his term. High Ext. Rem., pp 441, 37; Sec'y v. Mc-Garrahan, 9 Wall 298; Book 19, U. S. Sup. Ct. L. Co., p. 581.

The canvassing board by resolution declared it had no proper returns to act upon from this precinct, and their decision cannot be reviewed by *mandamus*.

*Walter C. Fawcett* and *John F. Hughes* for respondent.

The real question presented by appellant's motion to dismiss was whether the state, upon the relation of Smith, was a proper party to be joined with Smith as an individual. Further than striking the name of the state as a party plaintiff the court was not bound to go. Misjoinder of parties is not a ground of demurrer, nor a ground for entirely defeating the action. Pom. Rem. & Rem. Rights, §§ 206, 211; Ackley v. Tarbox, 31 N. Y. 564; Simon v. Kennedy, 53 N. Y. 298. After the striking out of the name of the state the case properly proceeded to judgment against the defendants in the name of Smith as an individual. Harst. Prac. §§ 1063, 1110; Comp. Laws, § 5536; People v. Pacheco Co., 29 Cal. 213; People v. County Judge, 40 Id. 480; People v. San Francisco, 36 Id. 605; Linden v. Armeda Co., 45 Id. 7; State v. Commissioners, 11

Kan, 66; Hagerty v. Arnold, 13 Id. 367; State v. Faulkner, 20 Id. 541. The appellants cannot complain of the state not being a party, as it was stricken out on their motion. Railroad v. Bank, 135 U. S. 432; Bailey v. Scott, 1 S. D. 337.

The judges of election of the various polling places in Sully county duly made and transmitted the returns to the county auditor. He in turn called to his assistance three of the county commissioners. The auditor having been a candidate for office it was the duty of the commissioners thus called to call to their assistance some other officer of the county not a candidate. This they failed to do, and therefore no proper canvass of the votes has ever been made.

The county auditor performed his whole duty, and, up till the time the canvassing board had made its abstract of the votes cast, had no other duty to perform. He was therefore not a proper party defendant. High Ext. Leg. Rem. §§ 440, 442.

The board of county canvassers under the laws of South Dakota are mere ministerial officers, whose duties to count and canvass the votes and make abstracts thereof can be enforced by *mandamus*. The fact that the board has met and canvassed a portion of the returns and adjourned *sine die*, and that in pursuance of such partial canvass a candidate has received a certificate of election, and has entered upon the duties of his office, does not deprive the court of the power upon *mandamus* to compel a complete and correct count and canvass to be made. High Ext. Leg. Rem., § 55; Lewis v. Commissioners, 16 Kan. 102; Privett v. Stevens, 25 Id. 275; Morgan v. Commissioners, 24 Id. 71; State *ex rel.* v. Board, 76 Mo. 142; State *ex rel.* v. Darshe, 65 Id. 480; State *ex rel.* v. Dinsmore, 6 Neb. 146; Clark v. Board, 126 Mass. 282; *In re* Strong, 20 Pick. 484; Ellis v. Commissioners, 2 Gray, ·374, State v. County Judge, 7 Ia. 186; Bradfield v. Wirt, 36 Ia. 265; State v. Wilson, 38 N. W. 31; State v. Howe, 44 N. W. 874; State v. Stearns, 11 Neb. 104; State v. Peacock, 15 Neb. 442; King v. People, 4 Neb. 509; State *ex rel.* v. Board, 36 Wis. 498; State v. Robinson, 1 Kan. 17; State *ex rel.* v. County Judge, 7 Ia. 390; Kisner v.

1891.] SMITH *v.* LAWRENCE et al. 191

Cameron, 39 Ind. 488; State v. Dinsmore, 5 Neb. 145; State v. Board, 6 La. 12; Drew v. McSing, 16 Fla. 17; State v. Board, 17 Fla. 29; Adjusters v. Eminger, 74 Pa. St 479; State v. County Canvassers, 4 Rich. S, 485; People *ex rel* v. Canvassers, 64 How. Pr. 334; People v. Payne, Id. 357; Call v. Board, 47 N. W. 227; Brown v. Rush, 17 Pac. 304; Terr. v. Reranillo Co. 16 Pac. 855. The above authorities are referred to as sustaining the position that *mandamus* and not *quo warranto* nor contest are proper proceedings in cases like the present. Bradfield v. Wirt, 36 Ia. 265.

Where a statute requires an act to be done on a given day for a purpose, it should be construed as directory, and such acts are valid though performed after the time. McCrary on El., § 88; People v. Allen, 6 Wend. 486; Quoad v. Eaves, 12 Conn. 243; *Ex parte* Heath, 3 Hill 42.

The duty sought to be compelled being of a public nature no demand was necessary. High on Ext. Leg. Rem., §§ 13, 41; State v. Bailey, 7 Ia. 393; State v. Wells, 40 N. W. 561; Virginia v. Rives, 100 U. S. 330; Atty. Genl. v. Boston, 123 Mass. 260.

CORSON, J. On the 27th day of December, 1890, Daniel M. Smith, plaintiff and respondent, applied to the circuit court of the sixth circuit, sitting in vacation, for a peremptory writ of *mandamus*, to be directed to the defendants, commanding them to reconvene as a board of canvassers of Sully county, and to complete said board by calling to its assistance another county officer, as provided by law, and to proceed to count, canvass, and abstract all the votes cast in said county, including precinct No. 26. Notice of the application was duly served, with a copy of the affidavit on which the application was to be made annexed thereto. The affidavit is, in substance, as follows: That on the 4th day of November, 1890, a general election was held in the county of Sully, for the election of state and county officers and for members of congress; that at said election the respondent, Daniel M. Smith, and one Albert A. Faust were candidates for the office of sheriff of said Sully county; that there were in said county 28 precincts or polling

places, from all of which returns were duly and regularly made prior to November 8, 1890,—one properly sealed up and forwarded to the county auditor of said county, and one deposited with the chairman of the board of county commissioners of said county, as provided by law; that upon said day the auditor of said county called to his assistance a majority of the board of county commissioners of said county who were not candidates for office at said election,—being the three persons named as defendants herein,—there being at that time five commissioners in said Sully county duly elected and qualified, and acting as such commissioners; that H. E. Kimmell was county auditor of said county, and was a candidate at said election for re-election to said office, and that he did not otherwise act in the canvass of the votes of said county than as clerk to said board of canvassers; that the defendants Lawrence, Maxwell, and Mateer immediately proceeded to canvass the vote of said county without calling to their assistance one of the officers of said county who was not a candidate for election to any office at said election, and without calling to their assistance any other person; that said Lawrence, Maxwell, and Mateer, as such board of canvassers, proceeded to count and canvass the votes as returned to said auditor for each of the election precincts of said county, with the exception of those returned from precint No. 26 in said county, and that the result of said count and canvass was that said respondent, Daniel M. Smith, received 289 votes for the said office of sheriff, and said Albert A. Faust received for the same office 296 votes; that said canvassing board refused to count, consider, or canvass the votes returned from precinct No. 26; that the poll-book of said precinct No. 26 contained the names of every person voted for at said election, and that from said poll-book it appears that Daniel M. Smith, respondent, received 37 votes, and said Faust received 20 votes, as candidates for the office of sheriff of said county; that had said votes from precinct No. 26 been counted and canvassed by the said board, as by law required, the count and canvass should and would have shown that said Daniel M. Smith received as candidate for sheriff 326 votes, and said

Faust 316 votes for the same office, thereby giving said Smith a majority of 10 votes over the said Faust, and had said board been fully organized, entitled said Smith to a certificate of his election as sheriff of said county; that said Smith was fully qualified to act as sheriff of said county, and that, although the defendants have often been requested, they have utterly failed and refused, and still do refuse, to do their duty as such county canvassers in the premises, and have ordered the county auditor of said county to issue a certificate of election to said Faust, showing him to be elected sheriff of said county, and which certificate has been issued to him by said auditor.

The proceedings were originally commenced in the name of the state, on the relation of Daniel M. Smith, but, on motion of the defendants, the name of the state was stricken out, and the case has since proceeded in the name of the plaintiff, Daniel M. Smith, who is the real party in interest, and is, we think, the proper party plaintiff. When the proceeding is to redress a private wrong, as was evidently the object of this proceeding, the party beneficially interested should be named as the plaintiff. Linden v. Alameda Co., 45 Cal. 7; Damrell v. San Joaquin, 40 Cal. 158; Hagerty v. Arnold, 13 Kan. 367. Counsel for the defendants filed a motion to dismiss the application on certain grounds therein stated, which being denied, the defendants interposed a demurrer to the application, upon substantially the same grounds as stated in the motion; the sixth ground of said demurrer being "that the affidavit presented for said peremptory writ of *mandamus* does not state facts sufficient to justify the court in granting said writ." The demurrer was overruled, and from the order overruling the demurrer an appeal was taken to this court, and is now pending. But as the sufficiency of the pleading is raised by the objection to the affidavit taken in this court, as well as by the demurrer, we will consider the sufficiency of the affidavit on this appeal from the judgment, reserving the question argued on appeal from the order, as to whether or not an appeal can be taken

from an order overruling a demurrer to the affidavit in this class of cases, for future consideration.

Does the affidavit state facts sufficient to authorize a court to issue the writ? It is contended by counsel for appellants that the writ should not issue for the reason that the facts disclosed by the affidavit show that the board of canvassers was properly organized by the county auditor, performed its duties as such, and adjourned prior to the institution of this proceeding, and as a part of the relief demanded by the plaintiff is that the three canvassers, defendants herein, shall call to their assistance another county officer, as provided in Section 18, Chapter 84, Laws 1890, and which relief the court will not grant any relief in the premises.

While we agree with the counsel in their contention that the board of canvassers was legally and properly constituted, we do not agree with them in their conclusion that the court is precluded from issuing the writ because it cannot grant plaintiff all the relief asked   But we are of the opinion that, though plaintiff may have demanded greater relief than he is entitled to by law, the court may grant him the relief to which he is entitled under the facts stated. State v. Crites (Ohio,) 26 N. E. Rep. 1052; State v. Board, 36 Ohio St. 409; Ross v. Board, 42 Ohio St. 379. It appears from the affidavit that in Sully county there were five county commissioners duly elected and qualified, and that the auditor took to his assistance in canvassing the vote of said county a majority of said board. It also appears that the auditor was himself a candidate for re-election. This renders necessary the construction of Sections 1, 18, Chapter 84, Laws 1890. Section 1 of that Chapter provides: "On or before the tenth day after the close of any election, or [as] soon thereafter as all the returns are received, the county clerk or auditor shall take to his assistance a majority of the county commissioners of the county, or the county treasurer, judge of the county court, and one county commissioner, none of which persons so called shall be candidates for office, unless there is not sufficient of said officers who are not such candidates, and shall proceed to open the returns from the various voting pre-

cincts in said county, and make abstracts of the votes in the following manner." * * * And Section 18 provides: "If the county auditor or county clerk, as the case may be, is a candidate for office, he shall take no part in the canvass, but shall act as a clerk of said board of canvassers for the county, and the two officers called to the assistance of the county clerk or auditor to make the county canvass shall call to their assistance one of the officers of said county, who is not a candidate, and, if there is none of said officers remaining who is not a candidate, then they shall call to their assistance a justice of the peace, and it shall thereupon be their duty to at once attend and make said canvass as hereinbefore provided." Both sections seems to have been drawn upon the theory that no county has more than three commissioners. If such were the case, there would be no difficulty in construing the two sections together. But when there are five commissioners in a county, as there were in Sully county, a difficulty in construing the two sections at once arises. By Section 1 of that chapter the county auditor and a majority of the county commissioners, or the county auditor and the treasurer, judge of the county court, and one commissioner, constitute the board of canvassers. Now it is provided by Section 18 that when the auditor is a candidate the two called to his assistance shall call to their assistance one of the other officers designated in that section. It is contended by the counsel for the defendants that when a county has five commissioners, and a majority is taken to the assistance of the auditor, the three constitute a full board, as well in cases where the auditor is himself a candidate as when he is not, and that the three taken are not required to call another officer to their assistance.

We think the counsel are right in their contention, and that it is only in cases where there are two only taken to the assistance of the auditor, and the auditor is himself a candidate, that a third must be called in, under the provisions of Section 18. The provisions of Section 18 are only brought into exercise when there are but two competent canvassers. When the auditor has brought into existence the three members of the can-

vassing board, by taking a majority of the five county commissioners, or the county treasurer, county judge and one commissioner, there arises no necessity for proceeding under Section 18 to increase the number of the board. This section, therefore, seems to have been designed to meet the contingency when the auditor shall have only taken a majority of the commissioners in a county having only three, and when he himself is a candidate for re-election. Section 18 is limited, qualified, and controlled by the provision that two may call in a third to their assistance. If there are only two canvassers, in addition to the auditor, and he himself is a candidate for re-election, these two are authorized to call to their assistance the third canvasser. But when there are three canvassers, exclusive of the auditor, no authority is given to them to call in another, and that section performs no other office in such case than to prescribe the duties of the auditor when he is a candidate. This construction seems to be in harmony with the spirit and letter of the provision of the statute that the board of canvassers shall be composed of at least three disinterested persons.

The plaintiff alleges that the returns from precinct No. 26 were regularly made, and that the poll books so returned show that plaintiff had 37 votes in said precinct, and said Faust had 20 votes, which, if properly counted and abstracted, would have shown that plaintiff had a majority of 10 votes in the county, and that he was entitled to, and should have received, the certificate of election. When, therefore, the board of canvassers, failed and neglected to count, canvass, and abstract the vote and returns from precinct No. 26, it neglected to perform a clear, plain, and specific duty imposed upon it by law. It did not complete the canvass it was its duty to make and complete, and, until this is done, the duties of the board remain unperformed and unfinished as to that particular precinct.

But it is contended by counsel for appellants that, though the board of county canvassers has failed to perform its duty by neglecting to canvass the vote from precinct No. 26. it has made and filed the abstract required by law, and a certificate has been issued thereon to Mr. Faust, the opposing candidate,

and it has adjourned *sine die*, and therefore it cannot be recon-
vened, and required to count and canvass this vote. We cannot
agree with counsel in their contention. As is well stated in
Johnston v. State, 27 N. E. Rep. 422, (decided in Indiana the
present year:) "The duties of election officers, when prescribed
by statute, as in this instance, are imperative, and performance
may be coerced by the writ of *mandamus*. Nor can the election
officers evade their duties by adjourning without taking the ac-
tion required by law." The court then quotes from Attorney
General v. Board, 64 Mich. 607, 31 N. W. Rep. 539, with appro-
bation, the following from the opinion of that court, in speak-
ing of the duty of canvassers: "Until they [the canvassers]
have done so, [canvassed all the precincts,] they have no right
to dissolve their meeting. They can only get out of their
office by completing their work. It would be worse than
absurd to allow a board of canvassers to defeat the popular
will and destroy an election by neglecting to do what the
law requires them to do." In Lewis v. Commissioners,
16 Kan. 102, a case very similar to the one at bar, Mr. Jus-
tice BREWER, speaking for the court, says: "It is the duty
of the canvassers to canvass all the returns, and they as truly
fail to discharge this duty by canvassing only a part, and refus-
ing to canvass the others, as by neglecting to canvass any."
In the case at bar the board of canvassers had a clear and
well-defined ministerial duty to perform. It was required to
canvass and make an abstract of the votes from all the precincts
in that county, not a part of them, and, until it has performed
this duty, it has failed to do what the law requires of it, and the
court below had full power and authority to direct, by its man-
date, the board to perform this duty, regardless of the facts
that a certificate had been issued to another, and the board had
adjourned. Coll v. City Board, (Mich.) 47 N. W. Rep. 227;
State v. County Judge of Marshall Co., 7 Iowa, 186; State v.
Bailey, Id. 390; Ellis v. County Commissioners, 2 Gray, 370;
State v. Dinsmore, 5 Neb. 145; State v. Wilson, 24 Neb. 139,
38 N. W. Rep. 31; Morgan v. Board, 24 Kan. 71; *In re* Strong,
20 Pick. 484; Clark v. Board, 126 Mass. 282; Johnston v. State,

(Ind.) 27 N. E. Rep. 422; Kisler v. Cameron, 39 Ind. 488; Moore v. Kessler, 59 Ind. 152; State v. Gibbs, 13 Fla. 55; People v. Scheilling, 95 N. Y. 124; State v. Peacock, 15 Neb. 442, 19 N. W. Rep. 685; People v. Nordheim, 99 Ill. 563; Haggerty v. Arnold, 13 Kan. 367; Brower v. O'Brian, 2 Ind. 423.

It is further contended by the appellants that a *mandamus* should not issue in this case, for the reason that plaintiff has a plain, speedy and adequate remedy by contest and *quo warranto* proceedings. But we are of the opinion that such is not the case. The remedy by contesting the election of Faust under the statute was not available at the time this proceeding was instituted, as it does not appear that notice of such contest had been given within the 20 days after the canvass, as required by the provisions of the law governing contest proceedings. Bowler v. Eisenhood, (S. Dak.) 48 N. W. 136. But, even if this were not so, that remedy would not be adequate to accomplish the result sought to be accomplished in this case,—the proper canvass of the returns of the votes, and the filing of the proper abstract in the office of the auditor, upon which the proper certificate should issue. *Mandamus* is the only proceeding that can give plaintiff the desired remedy, and place him in the position with reference to the office of sheriff that he is entitled to by law; and that is the person shown by the abstract of the votes of said election to be elected to the office of sheriff of Sully county, and entitled to the certificate of election; and the law relating to contesting elections specifically provides that the "act shall not be construed to affect any of the remedies or rights of action or proceedings provided for in the Code of Civil Proceedure." Section 1499, Comp. Laws. Proceeding by *quo warranto* is neither adequate, plain, or speedy, and the remedy sought here could not, in any event, be obtained under that proceeding. If a proper and legal canvass of the returns by the officers whose duty it is to make such canvass will show that plaintiff is the elected sheriff of said Sully county, why should he be compelled to institute other proceedings than those necessary to compel the canvassing board to perform its duty, and make the proper canvass and abstract

which will show that he is so elected, and *prima facie* entitled to the office? True, *mandamus* may not give him the office. Other proceedings may be necessary to oust the incumbent, and place the plaintiff in the office, but that affords no reason why the defendants should not be compelled to perform the duties imposed on them in the premises.

But a further and more conclusive reason why plaintiff could not have instituted proceedings in *quo warranto* is that, when these proceedings were instituted, Faust was not an incumbent of the office, and *quo warranto* proceedings could not then have been commenced against them.

Again, it is contended that plaintiff has been guilty of laches in not sooner instituting proceedings to compel this board to do its duty in the premises. But there is no merit to this contention, as applied to this case. The returns and abstract of the votes are within the control of the county, and when that is the case, it cannot be said that the proceeding has gone beyond the jurisdiction of the board. It is alleged that the board of canvassers adjourned November 8th, and the notice of these proceedings was served December 3d,—only about 25 days,—certainly not an unreasonable delay. We are of the opinion, therefore, that the affidavit states facts sufficient to entitle the respondent to the issuance of the writ, and that the court properly overruled the demurrer.

This brings us to the merits of the case. The defendants on the demurrer being overruled made answer or return to the affidavit, admitting substantially all the facts alleged, but setting up, in substance, that two ballot-boxes were returned from precinct No. 26. That it appeared from the face of certain papers in the auditor's office that in said precinct certain soldiers from the regular army of the government of the United States voted. That the votes of said soldiers were placed in one ballot-box and the votes of civilians were placed in another and different box. That it did not appear from the boxes or papers which box contained the soldiers' votes and which contained the votes of civilians. That it further appeared that the votes of said soldiers were entered in the pretended poll-books

promiscuously with the votes of civilians, and that the canvassing board concluded and determined on full investigation that the pretended ballot-boxes and books purporting to come from said predinct No. 26 were unofficial and uncertain, and not returns at all, and that there were no certain official returns from said precinct, and it did not therefore canvass the same. It is further stated in the answer or return to said affidavit that, upon the completion of said canvass by said board, said Albert A. Faust was duly declared elected sheriff of said county, and the various other officers were declared elected to their respective offices, and the board thereupon adjourned *sine die.* That a certificate of election was duly issued to said Faust, as sheriff of said county, by the county auditor, and that he has qualified and entered upon his duties as sheriff of said Sully county, and is now performing the duties of said office. That Thomas Mateer, who was a county commissioner, and a member of said canvassing board, ceased to be a county commissioner on the first Monday of January, A. D. 1891, his term of office having expired at that time. At the commencement of the trial all the facts stated in the affidavit and answer, except as to the returns from precinct No. 26, were stipulated to be as stated. During the trial one Porter, a witness on the part of the plaintiff, was asked the following question: "Was or wasn't this book [referring to poll-book] used by the board in the canvass of Sully county?" This was objected to by counsel for the defendants, and, their objection having been overruled, they have made the ruling of the court the ground for the seventh assignment of error. The answer was: "The book is the return used." We think the court ruled correctly in permitting the question to be answered. The witness had stated that he was deputy county auditor of Sully county, and that the poll-book was returned from precinct No. 26,—brought there by one of the judges of election of that precinct,—and that the book had been kept in his safe, as register of deeds, with the other poll-books placed in his safe for safe keeping. He had also stated that this poll-book was on file in the auditor's office as the return from precinct No. 26. Another witness, Mr. Jordan, was

asked in reference to this poll-book: ''I will ask you to state what that book is?'' ''Objected to by counsel for the defendants, on the ground that the witness is wholly incompetent to testify concerning the book, as there has been no showing that the witness had any knowledge concerning this book.'' Exhibit A. The objection was overruled and the witness allowed to answer the question, which he did by stating that ''this book is the book presented to the canvassing board by the county auditor on Nov. 8, 1890, in Sully county.'' This is made the ground of the eighth assignment of error. We think the court ruled correctly in overruling the objection. The witness is asked as to a fact, not an opinion. We do not understand the rule to be that a witness must show that he* is qualified by possessing proper knowledge to state a fact. His knowledge or means of knowledge is a subject for cross-examination. The witness had, however, in this case, stated that he was deputy treasurer of the county; that he remembered when the county canvass took place, and, inferentially, at least, that he was present at the canvass; and, when asked to state exactly what he saw done with this book, he stated: ''The boxes were first opened,—the boxes of the precincts,—and envelopes brought out,''—that he was an interested party, and took this book, and saw that it was a legal return. This, we think, with the other testimony he had given, was sufficient to show that he had knowledge of the book, and his evidence in regard to it was properly admitted. The poll-book was then offered in evidence, and objected to by defendants on the ground that it was not identified as the return from precinct No. 26, and that the proper foundation had not been laid for its introduction. We are of the opinion, however, that there had been sufficient proof as to its being the return from that precinct to entitle it to be admitted in evidence. But, if this was not so, the plaintiff had set out fully the facts relating to this return from precinct No. 26, and the return itself, so far as it affected the office of sheriff, and these facts were not denied in the answer, and were therefore admitted; hence there was no issue in regard to the facts that a return had been duly made within the proper time, and by the proper officers. And no issue was

made as to the return, so far as it affected the office of sheriff, and the number of votes cast for said Smith and said Faust in said precinct at the November election, 1890, and therefore, if the poll-book had been excluded, it could not have affected the result in this case.

The plaintiff having rested, the defendants offered in evidence the following document, taken from the sealed envelope with the poll-book from precinct No. 26: "Greenview Voting Precinct, November 4, 1890. To the canvassing board of Sully county: We, the undersigned judges of election for precinct number 26, Greenview township, hereby submit the following statement of facts. There appeared before this board, [nine persons named.] and offered their votes, they being men listed as soldiers in Fort Sully, and entitled to vote, under the statutes of the United States, at the nearest voting precinct. We 'excepted' their votes in a separate ballot-box. canvassed the same separately, put them back in the same box, and return the same inclosed in the larger box, under seal and lock. [Signed] CHARLES W. PORTER. E. A. FIELDHOUSE. R. N. ARTHUR." This document was objected to by the counsel for the plaintiff, on the ground that it was incompetent, irrelevant, and immaterial, and was excluded by the court. This is assigned as error. Counsel for defendants insist that this document should have been admitted in evidence, that, being found in the same envelope with the poll-book, and signed by the same judges as the poll-book admitted in evidence, it constituted a part of the return from that precinct.

We are clearly of the opinion that the court committed no error in excluding this paper. It was a document that the judges of election were neither required nor authorized to make, and it was therefore incompetent, irrelevant, and immaterial in the case. The certificate of officers not authorized or required by law has no more force or effect than the certificate of private persons. U. S. v. Bank of Columbus, 21 How. 356; Goose River Bank v. Willow Lake School Tp., (N. Dak.) 44 N. W. Rep. 1002; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. Rep 315; Daviess Co. v. Dickinson, 117 U. S. 657, 6 Sup. Ct. Rep

897; School Directors, etc., v. Fogleman, 76 Ill. 189; Dill. Mun. Corp. § 531.

A return by the judges of election is required and authorized by law, and hence is competent evidence of the facts the judges are authorized and required to state therein, but not of other facts not so authorized or required. The duties of judges of election and the returns or certificates they are required and authorized to make are clearly and specifically defined in Chapter 14. §§ 1440–1470, Compiled Laws. Their duties as defined are larely ministerial. When the ballots of the voters have been received and placed by the judges in the ballot-box, they have no further control over them, except to canvass them, and set down in their poll-books "the name of every person voted for, written at full length, the office for which such person received such votes, and the number he did receive, the number being expressed at full length," and such entry to be made substantially in the form specified in Section 1467, Comp. Laws. "The judges of election shall then inclose and seal one of the poll-books, and, under cover, direct the same to the county clerk [or auditor] of the county in which such election was held," and the other poll-book, together with the ballots and ballot-boxes, shall be deposited with the chairman of the board. Section 1468 Id. In this case the law had been complied with by the judges of election in precinct No. 26. The poll-book with the proper entries therein had been forwarded to the auditor, and the other poll-book and ballot-box deposited with the chairman of the board, as required by this section. The judges, it will be seen, are not required or authorized to make any other statement or certificate, and, when they assume to so make any, it can and should have no effect whatever. Not only is such a document without force and effect, but inclosing it with the poll book was highly proper.

This brings us to the consideration of the action of the board of canvassers in failing to canvass precinct No. 26. Have the board shown any justification for their action in reference to this precinct? None, we think, is presented by the record. The duties of a board of county canvassers under our election

law are purely ministerial.   The board is required "to open the
returns from the various voting precincts in said county, and
make abstracts of the votes." Section 1. Chapter 84, Laws
1890.   Such board is vested with no authority to take evidence
upon, hear, or determine any question before them relative to
the validity or regularity of any election or as to the qualifica-
tion of any voter who may have voted, or the eligibility or non-
eligibility of any candidate voted for.   Its duty is "to open the
returns, and make abstracts of the votes" appearing in said re-
turns, and to sign and certify to such abstract.   The poll-book,
with the entries therein provided for by Section 1467, Comp.
Laws, and which has been sealed and forwarded by the judges
of election to the clerk or auditor, is the only document the law
permits the county canvassers to examine, and it is the only
document that should control or govern them in their action.
If the returns provided by law appear to be genuine, the can-
vassers' duties are to count and canvass them, ascertain from
them the number of votes given to the various candidates, and
certify that result.   Questions of the regularity of the election,
qualification of the voters, eligibility of candidates, fraud in the
election, etc., are exclusively for the courts, in the proper pro-
ceedings, and are not matters which boards of canvassers have
any authority to hear or determine.   "They are not made a
judicial tribunal nor authorized to decide upon the validity of
the election in any other mode than by examination of the re-
turns made to them according to law.   They are not required
or authorized to hear witnesses or weigh evidence.   They have
no power to send for persons or papers.   If one result appears,
upon the returns, and another is the real truth of the case, they
can only act upon the former."   Luce v. Mayhew, 13 Gray, 83;
Clark v. Board, 126 Mass. 282; *In re* Strong, 20 Pick. 484.   In
Lewis v. Commissioners, *supra*, the court says: "As to the
other two questions. it is a common error for a canvassing
board to overestimate its powers,   Whenever it is suggested
that illegal votes have been received, or that there were other
fraudulent conduct and practices at the election, it is apt to im-
agine that it is its duty to inquire into these alleged frauds, and

decide upon the legality of the votes. But this is a mistake. Its duty is almost wholly ministerial. It is to take the returns, as made to them from the different voting precincts, add them up, and declare the result. Questions of illegal voting and fraudulent practices are to be passed upon by another tribunal. The canvassers are to be satisfied of the genuineness of the returns,—that is, that the papers presented to them are not forged and spurious; that they are returns, and are signed by the proper officers,—but, when so satisfied, they may not reject any returns because of informalities in them, or because of illegal and fraudlent practices in the election. The simple purpose and duty of the canvassing board is to ascertain and declare the apparent result of the voting. · All other questions are to be tried before the court for contesting elections, or in *quo warranto* proceedings." In Attorney General v. Board, *supra*, the court says: "This statute defines who shall be canvassers, and respondents are the canvassers provided for. It requires them to organize with chairman and secretary, which they have also done. It then imposes upon them the single and specific duty of canvassing the votes certified by the election officers, and certifying the number of vates cast for each location, and the place designated. They are not a judicial or *quasi* judicial body. They are not a permanent body, with administrative functions. They are created for a single occasion and for a single object. They have no means given them to inquire, and no right to inquire, beyond the returns of the local election boards. They have no right to raise outside issues to decide themselves, or to ask us to decide. When they have figured up the returns exactly as handed over to them, they have completed ther task and exhausted their powers." Privett v. Stevens, 25 Kan. 275; · State v. Wilson. 24 Neb. 139, 38 N. W. Rep. 31; State v. Peacock, 15 Neb. 442, 19 N. W. Rep. 685; Hagge v. State, 10 Neb. 51, 4 N. W. Rep. 375; State v. Stearns, 11 Neb. 104, 7 N. W. Rep. 743. The returns in the case at bar being regular in form, and signed by the proper officers, it was the duty of the board to canvass and abstract them, and certify the result, without regard to any other paper, notices, or documents found

sealed up with the returns. The poll-book alone, with the proper entries therein of the judges and clerks, were the documents it was authorized to examine, and those alone should have guided the board in its canvass. The paper or document offered in evidence is without force or effect, and should have been entirely disregarded by the canvassers, and was therefore properly exclued by the court.

Counsel for appellants further insist that, conceding this to be so, no *mandamus* should issue, for the reason that Faust is now an incumbent of the office of sheriff of Sully county, performing its duties. But we are of the opinion that this does not affect plaintiff's right to the writ. The decisions upon this question are not uniform, but we think the cases holding that the fact that there is an incumbent of the office will not prevent the writ issuing are based upon the better reason, and supported by the weight of authority. In Ellis v. County Commissioners, 2 Gray, 370, the answer set up as a defense to the writ that Townsend, who had been declared elected, had duly qualified, and was in the discharge of the duties of the office. In delivering the opinion of the court, Chief Justice SHAW says: "The questions are whether, upon the return of the commissioners and their record, as amended, the prosecutor of the writ was entitled to a certificate and adjudication that he had the highest number of votes for county treasurer, and whether this question can be inquired into under this process. We are not now to consider whether the county commissioners can be required to place the prosecutor in the office. It may be that, even if he should succeed, and show that he ought to have been declared duly elected, he may be obliged to resort to his *quo warraoto*, in order to remove the present incumbent from the office, before he can be restored; and we understand that an application for such a proceeding is now pending. But we are satisfied that it is competent for this court, on this writ, at the instance of the prosecutor, to inquire into the facts, and to require the county commissioners to do what it was plainly their duty to do, and what it is still in their power to do,—to declare and certify, if such was the fact, that the prosecutor had the highest

number of votes for the office,—as one step, and one important step, toward obtaining his right, without which he could not obtain it. And the prosecutor at present asks the court to go no further." In the earlier case of *In re* Strong, 20 Pick. 484. Mr. Justice Morton discusses this question very fully, as the fact that a new election had taken place since the canvass, and the person elected and qualified had entered upon the duties of the office before the writ was appled for, was set up as a defense to the writ, and urged with great ability and learning by the counsel for the defendants; but the court in its opinion says: "The cases referred to were applications to be admitted to an office. The petitioner only seeks for a certificate of his election. This, if he obtains it, will not necessarily oust the incumbent, or give petitioner possession of the office. For these purposes he may still have to resort to a *quo warranto.* * * * But, without further reference to authorities, we are clearly of the opinion that a *mandamus* is the proper remedy in this case." Dew v. Judges, 3 Hen. & M. 1; King v. Mayor, etc., 4 Term R. 699; Hagerty v. Arnold, 13 Kan. 367.

It is also contended by counsel for the defendants that the auditor should be a party to the proceedings, and the writ should issue to him commanding him to convene a new board, as the canvassers taken by the auditor, having performed their duties and adjourned, cannot now be reconvened. But the board organized by the auditor to perform the duties of making a canvass of the result of the election in Sully county has failed to perform that duty, and, until it does complete its labors, it continues as a board of canvassers for that special purpose, and may be reconvened by the order of the court. While the auditor would, perhaps, have been a proper party in connection with the canvassers, he is not an indispensable party, and the court will not presume that he will not perform his duties as clerk of the board, or, as auditor, file a corrected abstract as to the candidates for sheriff, and issue the proper certificate thereon.

Again, it appears from the record that Mateer, one of the former county commissioners, and a member of the board of canvassers, has since the canvass ceased to be a county com-

missioner by reason of the expiration of his term of office; and counsel for appellants contend that, for that reason, the old board of canvassers cannot be reconvened, and compelled to act as a board of canvassers. This might be so if any new matter requiring action was to be brought before the board. But such is not the case here. The board will simply be required to perform a duty that they neglected to perform when in session, and the performance of which the law required before it could adjourn; in other words, it will be commanded to reconvene and complete its labors in canvassing precinct No. 26, as to the office of sheriff only. Such being the case, we see no difficulty in calling upon Mr. Mateer to do what he neglected to do while in office, and which the law commanded him to do. The law has provided the method of organizing the board, and, it having been organized as provided, it remains the board until its duties are concluded, and it is by law permitted to adjourn. We are clearly of the opinion that Mateer properly continues one of the board, and can only cease to be one when he performs all the duties required of him as a member of the board. The rule, no doubt, is, as contended for by the appellants, that ordinarily a *mandamus* will not issue to compel a person to do an act as a public officer after his term of office has expired, and he has retired from the office. In this case Mateer is not called upon to perform any duty as county commissioner, but to perform the duty imposed upon him as a canvasser, and which duty devolved upon him while he was a commissioner, it is true, but from which he cannot be absolved until the duty is performed, as it is a duty that he can perform as a member of the board of canvassers, though no longer a county commissioner. He is to act now, not as county commissioner, but as a member of a board, and because it is a duty that he should have performed before the board adjourned, and upon the performance of which the board had a right to dissolve or adjourn. Supposing the 37 votes alleged to have been cast for the plaintiff in precinct No. 26 had been omitted by mere accident or mistake will it be contended that a new board of canvassers would be necessary to correct the mistake, and include these 37 votes in

the abstract? We think not. No one, we apprehend, would say it was not competent for the court to compel the old board to reconvene, and correct this mistake. Assuming that the board, in this case, acted in good faith, they simply made a mistake in omitting these votes from the canvass.

It is further insisted that no proper demand was alleged or proven on the trial. There is in the affidavit the general allegation of demand and refusal, which is not denied. We think this is sufficient, if a demand in such cases is necessary. But we are of the opinion that where, as in this case, the duty is clearly and specifically imposed by law, and the defendants have neglected to perform the duty as required by law, no special demand is necessary. "The law itself makes the demand, and the omission to perform is the refusal." High Extr. Rem. § 41; State v. County Judge, 7 Iowa, 186; State v. Bailey, Id. 390; Com. v. Commissioners, 37 Pa. St. 237; Humboldt Co. v. Churchill Co., 6 Nev. 30. But as the judgment in this case was rendered by the court upon the theory that the board of canvassers in said Sully county was not properly constituted or organized, and that another officer should be added to said board, and that it should then proceed to canvass the returns from all the voting precincts, for all officers voted for, and upon all questions voted on, at the said election held on November 4, 1890, in said county, the same must be modified and made to conform to this opinion by striking out all of said judgment after the words, "considered, ordered and adjudged that the peremptory writ of *mandamus* issued herein to the defendants James Lawrence, J. H. Maxwell, and Thomas Mateer," and inserting, "as members of the board of county canvassers of said Sully county, ordering and commanding them, as members of said board, that they do reconvene and reassemble as such board of canvassers at the court house in the town of Onida, the county-seat of Sully county, State of South Dakota, on the ——— day of ————————, 1891, at 10 o'clock A. M. of that day, [date to be inserted by the judge of the court below,] and that they do then and there at once proceed to open and canvass the

returns from the various voting precincts of said Sully county, including precinct number twenty-six (26), of the votes cast in all the precincts in said county at the general election held in said county on the 4th day of November, 1890, as returned to the county auditor of said county, and as shown by the poll-books returned to said county auditor from said precincts by the judges of election therein, so far as the same relate to the office of sheriff of said county; and that they do then at once proceed, as said canvassers, to make an abstract of all the votes cast at said election in the several precincts of said county for persons for the office of sheriff of said county, as shown by the poll-books from all the precincts in said county, to-wit, precincts from number one (1) to number twenty-eight, (28,) inclusive; and commanding them further to sign and certify to said abstract under the seal of the said county auditor, and to forthwith deposit the same in the office of said county auditor of Sully county. Done by the court in vacation this —— day of———, 1891, at ———, in the Sixth circuit, State of South Dakota." And, as so modified, the judgement is affirmed. All the judges concurring.

Reporter: A petition for rehearing was made and denied in this case.