THE STATE OF NEBRASKA, EX REL. GEORGE E. WILLARD,
v. O. E. STEARNS AND OTHERS.

**Relocation of County Seats:** CANVASSING VOTES. On the organization of N. county, the special commissioners appointed by the governor called an election for the election of officers and the location of the county seat, and in canvassing the votes cast at such election threw out forty votes cast for a certain point as county seat, thereby giving F. a majority of all the votes cast. *Held,* That the commissioners had no authority to reject votes, and that a mandamus would lie to compel them to canvass all the votes cast, and that the remedy by contest was not exclusive and in many cases was not an adequate remedy.

ORIGINAL application for mandamus.

*M. H. Sessions* and *Sibbett & Fuller*, for relator.

*T. M. Marquett, C. J. Dilworth,* and *Reese & Gilkerson*, for respondent.

MAXWELL, CH. J.

It appears from the record that on the sixteenth day of June, 1879, it having been made to appear to the governor by the affidavits of three resident freeholders of Nance county that said county contained a population of not less than two hundred inhabitants, and that ten or more of the same were tax payers therein who petitioned the governor to appoint O. E. Stearns, George S. McChesney, and J. W. Whitney to act as special county commissioners in and for said county. That thereupon the governor did appoint the persons above named special commissioners, who qualified and entered upon the duties of their office. Said commissioners thereupon divided said county into five precincts, and on the twentieth day of September, 1879, fixed upon the fourth day of November, 1879, as the

time for holding an election for the various precinct and county officers of said county, and for the permanent location of the county seat. That on the question of the location of the county seat there were two hundred and two votes cast, of which the north half of sec. 13, township 17 north, range 4 west, received 95 votes; the north-west quarter of sec. 7, township 17 north, range 5 west, 15 votes; Fullerton eighty-nine votes. That upon a canvass of the votes, by the defendants, forty votes which had been cast in Genoa precinct for the location of the county seat on the north half of sec. 13, township 17 north, range 4 west, were thrown out and not counted by said defendants, the rejection of which votes gave Fullerton a majority of all the votes cast, and it was thereupon declared the county seat. It is now sought to compel the defendants to reassemble and perform their duty by canvassing all the votes returned.

A number of defenses are interposed, the principal of which are: *First*, That the matter has already been adjudicated. *Second*, That the relator does not show a sufficient interest to bring and maintain the action. *Third*, That the defendants have no further power or authority in the premises. *Fourth*, There is a plain and adequate remedy at law by contest.

It appears from the record that proceedings were instituted in the district court of Merrick county to compel the defendants to canvass the votes in question, which proceedings were afterwards dismissed. The grounds of the motion were irregularities in the proceedings, and the motion seems to have been properly sustained, as, in addition to the grounds therein set forth, it is clear that the court had no jurisdiction. There has therefore been no adjudication upon the merits of the case, and the proceedings referred to are not a bar to this action.

The objection that the relator cannot maintain the action is not well taken. When the question presented is one of public right, and the object of the action is to enforce the performance of a public duty, it is sufficient for the relator to show that he is a citizen, and as such interested in the execution of laws. *Hall v. The People ex. rel.*, 57 Ill., 313. *State v. Judge*, 7 Iowa, 202. *Hamilton v. The State*, 3 Ind., 458. *The People v. Halsey*, 37 N. Y., 348. *State v. Shropshire*, 4 Neb., 413. Sufficient appears in the application to show that the relator is a citizen and interested in the execution of the laws. This statement should have been made in the alternative writ also, as the writ must contain a statement of all the facts relied upon to entitle the party to the relief prayed for. But the objection is to the want of legal capacity of the relator to sue, and, unless objected to by demurrer or answer, is waived. There being no objection on this ground in the answer it is too late now to insist upon it.

The third objection, that the defendants have no further power or authority in the premises is insufficient. They accepted the office of special commissioners, and took an oath to faithfully discharge the duties thereof. One of the duties imposed upon them was that of canvassing the votes cast at the first election. This they have not done. It is no answer to say that they canvassed a part of the votes. It was their duty to canvass the entire number cast. They had no authority to reject any portion of the returns and refuse to receive them. Their duties were purely ministerial. *Hagge v. The State*, 10 Neb., 51. *State v. Hill*, Id., 58. To permit a board of canvassers to throw out votes or reject returns upon some pretext, and thus defeat the will of a majority of the electors and change the result of an election, leads to lawlessness and violence, and if carried out in all elections in the state for any con-

siderable period of time, would make elections a farce and byword. The act is none the less to be condemned because confined to a particular county. If the commissioners can reject forty votes why may they not reject one hundred or two hundred, and declare that some point in which perhaps they have an interest, and which received but one or two votes to have a majority of all the votes cast, and to be the county seat? Such a proceeding would at once be declared a gross violation of duty, yet it differs only in degree from the case at bar. A majority of the electors of Nance county have not yet designated any point as their choice for the county seat.

The objection that the relator has a plain and adequate remedy at law is untenable. The 6th subdivision of section 64 of the act to provide a general election law, approved March 1st, 1879, provides that an election may be contested "for any error in any board of canvassers in counting the votes, or in declaring the result of the election if the error would change the result." Laws 1879, 260. It is very clear from an examination of the statutes that it was not intended that this remedy should be exclusive. It is merely one of the grounds of contest, but it is equally so without the aid of the statute. But in many cases the mode here provided is not a plain and adequate remedy. Without attempting to define what is a full and adequate remedy at law, which must in a great degree be determined from the facts and circumstances of each case, I think all the cases agree that the mere fact that an action will lie does not supersede the remedy by mandamus. If the remedy by action is not a plain and adequate remedy, a mandamus should be awarded. If a person has received a majority of all the votes cast for an office, which, if canvassed, will entitle him to a certificate of election, why should he be compelled to

appear as contestant for an office to which on the face of the returns he is entitled? A remedy by contest in such case is not an adequate remedy. So in case of an election for a county seat, where no point has a sufficient number of votes to be designated as the county seat, it is the duty of the county commissioners to call another election, and in such cases the remedy by contest is ordinarily too circuitous and is not an adequate remedy. A peremptory writ will therefore be awarded as prayed.

LAKE, J., dissents.                    JUDGMENT ACCORDINGLY.